**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ANTHONY RUSSO,**

                   **Petitioner,**

      *- against -*

**DARWIN LACLAIR,**

                  **Respondent.**

**13CV2144 (VB)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO:    THE HONORABLE VINCENT L. BRICCETTI**
       **UNITED STATES DISTRICT JUDGE**

      Petitioner Anthony Russo, who is proceeding pro se, filed a Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 on February 22, 2013.[1]  Docket # 1 ("Petition").  The

Petition was originally filed in the U.S. District Court for the Western District of New York

(although the heading stated, "United States District Court [for the] Northern District of New

York").  The Hon. Michael A. Telesca, U.S.D.J. ordered that the case be transferred to the

Southern District of New York because it would be a "more convenient forum" given that "all of

the records relating to the petitioner's underlying criminal conviction are located in that district."

Docket # 2.  The case was assigned to Your Honor on July 10, 2013, see Docket Sheet, and Your

Honor referred it to me for a Report and Recommendation on July 11, 2013.  Docket # 6.

---

[1] Where appropriate, the undersigned will deem Petitioner's pro se submissions to have been
filed on the date that he signed them.  Cf. Noble v. Kelly, 246  F.3d 93, 97-98 (2d Cir. 2001)
(extending the "prison mailbox rule," pursuant to which the pleadings of incarcerated pro se
litigants are deemed filed on the day they are handed over to prison officials for mailing, to
habeas corpus petitions).

Petitioner asserts the violation of his right to due process by deprivation of his right to the effective assistance of counsel on appeal as his sole basis for habeas relief.  Petition ¶ 12.

For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed as time-barred.

## BACKGROUND[2]

By Orange County Indictment 2005-055 dated January 26, 2005, Petitioner was charged with three counts of criminal possession of a weapon in the third degree, nine counts of criminal possession of a weapon in the fourth degree, driving while intoxicated, and menacing in the third degree.  Ex. 1.[3]  Following a jury trial, Petitioner was convicted on July 6, 2005, in Orange County Court, State of New York, of two counts of criminal possession of a weapon in the third degree, ten counts of criminal possession of a weapon in the fourth degree, menacing in the third degree, and misdemeanor driving while intoxicated.  Affirmation in Opp'n (Docket # 9) ¶ 4.  On October 7, 2005, the state court sentenced Petitioner to indeterminate terms of one and one-half to seven years and one to seven years imprisonment on the third degree possession counts, to run consecutively, one year sentences on the misdemeanor weapons convictions and for driving while intoxicated, and 90 days on the menacing conviction.  Id.  On October 14, 2005, Petitioner, through his trial counsel, filed a Notice of Appeal with the Appellate Division, Second Department.  Ex. 3.

---

[2] The facts of Petitioner's crime are not at issue in this habeas proceeding and will not be recounted here.

[3] "Ex. __" refers to the exhibits included in Respondent's Record of Exhibits: Vols. I & II (Docket ## 9-2 & 9-3).  The pages in Respondent's Record of Exhibits: Vols. I & II are Bates stamped from 001-191.

The Appellate Division did not receive another filing from Petitioner until 2010.  On January 6, 2010, the Appellate Division received an affidavit in support of Petitioner's motion to proceed as a poor person upon appeal and for assignment of counsel.  Ex. 4.  The People[4] opposed the motion and cross-moved to dismiss the appeal as abandoned.  Ex. 5.[5]  Petitioner did not file either a reply or an opposition to the cross motion.  On March 15, 2010, the Appellate Division denied Petitioner's motion, granted the People's cross-motion, and dismissed the appeal. Ex. 6.

What happened thereafter was unclear based on Respondent's initial filings in opposition to the Petition.  Therefore, the Court issued an Order dated December 11, 2015, in which the Court ordered Respondent to provide either affidavits or other evidence in admissible form "to support [Respondent's] assertions that Petitioner failed to file any motions in the Court of Appeals and failed to file his leave application in the Appellate Division following the dismissal of his appeal by a Decision and Order of the Appellate Division issued on March 15, 2010." Docket # 17 ("December 11 Order").  In response to the Court's December 11 Order, Respondent submitted a Supplemental Affirmation with the requested documentation on February 1, 2016. Docket # 20 ("Suppl. Affirmation").

According to the Affidavit of Carol M. Barnes, a Senior Legal Secretary for the Appeals Bureau of the Orange County District Attorney ("Barnes Aff."), attached as Exhibit 1 to the Supplemental Affirmation, Barnes served a copy of the Appellate Division's March 15, 2010,

---

[4] The Orange County District Attorney's Office, which represents Respondent in this habeas proceeding, represented the People in Petitioner's criminal case.

[5] Although the People opposed Petitioner's motion as "grossly untimely" and pointed out that Petitioner provided "no[] explanation whatsoever for his unreasonable delay in seeking relief," Ex. 5 at 018, the People did not challenge Petitioner's request for poor person relief.  Id. ("[Y]our affirmant has no information that defendant is not indigent as he claims.").

decision on Petitioner at his last known address on April 2, 2010.  Barnes Aff. ¶ 6.[6]  Barnes added, "I have no record of this correspondence being returned to me.  I also have no record of Mr. Russo seeking leave to appeal to the Court of Appeals from the dismissal of his appeal."  Id.

Additionally, a letter sent to Respondent's counsel by John P. Asiello, Chief Clerk and Legal Counsel to the Court at the New York Court of Appeals, states, "In a search of the records of the Court of Appeals, no record was found of an application for leave to appeal filed by or on behalf of Anthony Russo."  Suppl. Affirmation Ex. 5.  Rather, the record reflects that Petitioner submitted to the New York Court of Appeals a motion for the assignment of counsel and for poor person relief dated June 15, 2010.  Ex. 7 at 024-025; see also Suppl. Affirmation Ex. 5 (includes a copy of Petitioner's June 15, 2010, motion to the Court of Appeals).  However, Respondent has provided the Court with a letter to Petitioner dated June 28, 2010, from Stuart M. Cohen, the Clerk of the Court for the New York Court of Appeals, which returned Petitioner's papers to him and noted that his "motion for assignment of counsel cannot be accepted for filing, as you have no appeal pending in the Court of Appeals."  Suppl. Affirmation Ex. 5.  Cohen's letter explained to Petitioner the steps that he needed to take in order to apply for leave to appeal. Nonetheless, Petitioner failed to take those steps, and in a July 22, 2010, letter Cohen informed Petitioner, "I again return your application for poor person relief and other papers, as you still have no appeal pending in the Court of Appeals."  Id.

In the meantime, on July 19, 2010, Petitioner served counsel for Respondent with the June 15, 2010, motion filed in the Court of Appeals, as well as a Notice of Application and Affidavit in Support of Motion (both of which were sworn to by Petitioner on July 14, 2010),

---

[6] This affidavit addresses the Court's concern, set forth in the December 11 Order, that Respondent "provide one or more affidavits from persons with knowledge, or other evidence in admissible form," to support Respondent's assertion that Petitioner was served with the Appellate Division decision on April 2, 2010.

which were addressed to the Appellate Division, Second Department, and which sought leave to appeal that court's denial of Petitioner's motion for poor person relief and for the assignment of counsel.  Ex. 7 at 027, 029; see Barnes Aff. ¶ 7.[7]  Nonetheless, the Appellate Division has no record of such a motion.  An affidavit from Aprilanne Agostino, the Clerk of the Court of the Appellate Division, Second Judicial Department ("Agostino Aff."), attached as Exhibit 4 to the Supplemental Affirmation,[8] states, "This Court does not have any record of Mr. Russo having sought leave to appeal to the New York State Court of Appeals from this Court's order of March 15, 2010, by which his appeal was dismissed."  Agostino Aff. ¶ 9.[9]

---

[7] Petitioner erroneously refers to the Appellate Division's Decision and Order as being dated May 15, 2010, instead of March 15, 2010.  In addition, the Affidavit of Service that accompanied these papers, which was sworn to on July 14, 2010, but states that service was effected on July 15, 2010, notes that the following documents were being served on (i) the Clerk of the Appellate Division, (ii) the Orange County District Attorney, and (iii) the Clerk of Court of the Court of Appeals:  "Notice of Application, Affidavit in Support of Motion, and a copy of Appellate Division:  Second Judicial Department[] (Decision & Order on Motion)."  Ex. 7 at 026.  These documents relate only to Petitioner's application for leave to appeal allegedly filed in the Appellate Division.  See id. at 027 & 029.

[8] As set forth in her affidavit, Agostino is currently the Clerk of the Court of the Appellate Division, Second Judicial Department, and has been since December 1, 2011.  Agostino Aff. ¶ 1.  "Prior to that [Agostino] served as a Deputy Clerk beginning in August of 2010, and prior to that [Agostino] served as an Associate Deputy Clerk for approximately six years."  Id.  Agostino states that her affidavit is based on her January 7, 2016, review of the Appellate Division's records, "which are maintained contemporaneously and in the regular course of business by my office, with respect to matters involving People v Anthony Russo, Orange County Indictment Number 2005-00055."  Id. ¶ 2.

[9] Likewise, Barnes states in her affidavit,

> Based on my review of the Appeals Bureau file and record entries, the District Attorney's officer [sic] never received either a directive from the Appellate Division or an assignment letter from the New York Court of Appeals to respond to the pro se motion.  There is also no indication that the District Attorney's Office was ever contacted by either appellate court and no other correspondence or decision was received from either court.

Barnes Aff. ¶ 7.  Elsewhere in the affidavit Barnes explained,

Petitioner next filed a motion dated July 28, 2010, under N.Y. Crim. Proc. Law § 440.20, seeking to have his sentence set aside. Ex. 8.[10]  Respondent's counsel, who attests to receiving a copy of the motion on August 12, 2010, served an affirmation in opposition on August 20, 2010. Affirmation in Opp'n ¶ 7 & Ex. 9.[11]  On September 14, 2010, Petitioner served his reply.  Ex. 10.[12]  The § 440.20 motion was denied by the County Court on November 30, 2010, and Respondent's counsel served a copy of the Decision and Order with Notice of Entry on Petitioner

---

I am familiar with the regular practice of the Appellate Division, Second Department when it comes to the calendaring of return dates for motions submitted by pro se state court defendants.  It is the practice of the Appellate Division to separately serve the District Attorney's Office with a notice that signifies the Court's receipt of a pro se motion and which directs a response by a date certain.  As a result of that practice, it is the practice of the OCDA [Orange County District Attorney] Appeals Bureau to log and file the receipt of pro se appellate motions and to not respond until a notice or directive is received from the Appellate Division for that motion.  I have also learned that the Appellate Division will not accept a response for filing in response to a pro se motion until the motion is first calendared and a notice is issued.  I am also familiar with the procedures for seeking leave to appeal to the New York State Court of Appeals. All leave applications are submitted by a letter application to the attention of the Chief Judge of the New York Court of Appeals.  Leave applications are then assigned to individual judges, and the Clerk's office serves an assignment letter on the parties that sets forth the schedule for responding to a leave application.  No response is submitted until an assignment letter is received by the Appeals Bureau from the Court of Appeals.

Barnes Aff. ¶ 5.

[10] Even though the Notice of Motion is dated July 23, 2010, the Affidavit in Support of the motion is dated July 28, 2010.  See Ex. 8.

[11] As reflected in the copies of Affidavits of Service produced by Respondent, Barnes effected service of all documents on behalf of Respondent's counsel.

[12] For some reason, Barnes states that Respondent's counsel received Petitioner's reply on September 12, 2010, Barnes Aff. ¶ 8 & attached Logbook entries, but this conflicts with both Respondent's Affirmation in Opposition, which states that Petitioner's reply affirmation was served on September 21, 2010, Affirmation in Opp'n ¶ 7, and the copy of the reply affirmation, which includes a copy of the envelope with postage dated September 20, 2010.  Ex. 10.

on December 10, 2010.  Ex. 14.  According to the Barnes Affidavit, Barnes has "no record of Anthony Russo seeking leave to appeal to the Appellate Division from the denial of his motion." Barnes Aff. ¶ 8; see also Agostino Aff. ¶ 11 ("[The Appellate Division] has no record of an appeal having been taken, or leave to appeal having been sought, from a November 30, 2010 order of the County Court, Orange County, under this indictment number.").[13]

Meanwhile, Petitioner made a motion in the Appellate Division, Second Department to vacate the dismissal of his appeal, and to reinstate the cause.  On October 1, 2010, the Appellate Division informed counsel for Respondent that the motion was placed on the calendar for October 22, 2010, and requested that counsel file an affidavit in response.  Ex. 11.  Respondent's counsel served an Affirmation in Opposition on October 13, 2010, and Petitioner served a responsive affirmation dated October 20, 2010.  Exs. 12-13.  The Appellate Division denied the motion in a Decision & Order on Motion dated December 22, 2010.  Ex. 15.  Barnes attests that she served a copy of the Appellate Division's Decision & Order on Petitioner at his last known address on January 20, 2011.  Barnes Aff. ¶ 9.[14]  She further states that she "has no record of that correspondence being returned to me.  I have no record of Anthony Russo seeking leave to appeal in either the Appellate Division or Court of Appeals from the denial of that motion."  Id.; see also Agostino Aff. ¶ 9 ("Nor do we have any record of Mr. Russo having sought leave to

---

[13] The December 11 Order had directed Respondent "to provide one or more affidavits from persons with knowledge, or other evidence in admissible form, to support its assertion that Petitioner failed to file any applications for leave to appeal" the denial of Petitioner's § 440.20 motion.

[14] A copy of the Appellate Division's Decision & Order on Motion was mailed to Petitioner along with a cover letter dated January 19, 2011.  Ex. 15.  The December 11 Order had directed that Respondent "provide one or more affidavits from persons with knowledge, or other evidence in admissible form," to support Respondent's assertion that Petitioner was served with the Appellate Division decision on January 19, 2011.

appeal to the New York State Court of Appeals from [the Appellate Division's] order of December 22, 2010, which denied his motion to reinstate the appeal.").[15]

Petitioner then sought to extend the time in which Petitioner could take an appeal from his judgment of conviction.  Ex. 16.  Petitioner sought to file the motion, which was dated October 10, 2012, in the Appellate Division, however, Respondent affirms that "[a]ccording to records maintained in the Appellate Division, Second Department, the petitioner's motion was rejected and returned to [Petitioner] on November 1, 2012, because his appeal had previously been dismissed."  Affirmation in Opp'n ¶ 9; see Agostino Aff. ¶ 8 ("[The Appellate Division] subsequently received two letters from Mr. Russo, one in 2011 and one in 2012, both of which, upon information and belief, requested more time to perfect his appeal.  Both letters were returned to Mr. Russo in correspondence which advised him that there was no appeal pending."); Barnes Aff. ¶ 10.[16]

---

[15] The December 11 Order had directed Respondent "to provide one or more affidavits from persons with knowledge, or other evidence in admissible form, to support its assertion that Petitioner failed to file any applications for leave to appeal" the denial of Petitioner's motion to have the dismissal of his appeal vacated and the cause reinstated.

[16] As Barnes explained in her affidavit,

> On October 25, 2012, the Appeals Bureau received Anthony Russo's pro se notice of motion to enlarge his time to take an appeal without directive. According to the caption of the motion, the motion was filed in the Appellate Division, Second Judicial Department.  The District Attorney's Office was never served with a directive, ordering the Office to respond to the motion and accordingly, the District Attorney's Office did not respond to the motion.  In my experience, the Appellate Division in other instances has contacted the District Attorney's Office in those rare occasions when it did not receive a motion response from the District Attorney's Office.  On a number of occasions, after being contacted by the Appellate Division, our office learned for the first time that we had not received the directive and motion.  The file also did not contain any record that indicated that the Appellate Division had separately contacted the office concerning a missing response, and there is also no record of any decision having been received relative to such a motion.

Thereafter, on January 24, 2013, Petitioner served upon Respondent's counsel, and filed with the Orange County Court, a "Notice of Motion and Memorandum of Law to Dismiss for Lack of Subject Matter [J]urisdiction and Fraud by [P]resumption." Ex. 17.  The motion was filed under the same index number as Petitioner's § 440.20 motion.  Respondent's counsel served an Affirmation in Opposition on February 1, 2013.  Ex. 18.  It is unclear if this motion was ruled upon; Respondent's counsel affirms that they have no record of the court's decision.  Affirmation in Opp'n ¶ 10.  At or about the same time, Petitioner also sought a copy of his pre-sentence report by an undated motion.  Ex. 19.  Respondent's counsel likewise opposed this motion in an Affirmation in Response dated February 6, 2013.  Ex. 20.  This motion was denied by the Orange County Court on March 20, 2013.  Ex. 31.

Petitioner next filed a motion for "Rule 5015 Relief from Judgement [sic] or [O]rder," seeking to have the judgment of conviction vacated pursuant to C.P.L.R. 5015.  Ex. 21.  The County Court judge made the motion, which was dated April 5, 2013, returnable on May 13, 2013, and asked Respondent's counsel to submit any opposition papers by that date.  Id.  Respondent's counsel served an Affirmation in Opposition on May 9, 2013, Ex. 22, and Petitioner replied on May 12, 2013.  Ex. 23.[17]  That motion was denied by the Orange County Court on June 21, 2013.  Ex. 26.

Finally, on May 31, 2013, Petitioner filed and served a motion to vacate the judgment under N.Y. Crim. Proc. Law § 440.10 and for permission to proceed as a poor person.  Ex. 24.

---

Barnes Aff. ¶ 10.

[17] It is unclear whether Petitioner's reply was ever received by the County Court.  See Ex. 26 (Decision and Order cited only the "Motion Rule 5015 Relief from Judgment or Order" dated April 5, 2013, submitted by Petitioner and the Affirmation in Response dated May 9, 2013.)

Respondent's counsel served an Affirmation in Opposition on June 19, 2013. Ex. 25. The

motion was denied by the Orange County Court on August 22, 2013. Ex. 30.[18]

The instant Petition was filed February 22, 2013, and on July 11, 2013, Your Honor

directed Respondent to serve and file an answer by September 11, 2013. Docket # 5. Opposition

papers were filed by Respondent on September 9, 2013. Docket # 9. Petitioner filed an

Affidavit in Reply, docketed on October 1, 2013. Docket # 10.[19]

## DISCUSSION

In his Petition, Petitioner raises only one ground for habeas relief: that the dismissal of

his direct appeal deprived him of the right to the effective assistance of counsel on appeal as

_____

[18] Petitioner took an appeal from this order, as explained in Agostino's affidavit,

> By notice dated September 5, 2013, Mr. Russo took an appeal to [the Appellate Division] from an order of the County Court, Orange County, dated August 22, 2013. That order denied his motion to vacate his October 7, 2005 judgment of conviction. The appeal was assigned Appellate Division Docket Number 2013-09430. By notice filed on or about November 25, 2013, the District Attorney, Orange County, moved to dismiss the appeal. By Decision & Order on Motion dated July 28, 2014, [the Appellate Division] granted the District Attorney's motion and dismissed the appeal from the August 22, 2013 order, citing CPL 450.15 and 460.15.

Agostino Aff. ¶ 10. Because this occurred subsequent to the filing of Respondent's opposition papers in this proceeding, copies of these documents are not included in the records provided by Respondent. However, as will be explained below, motions filed by Petitioner in state court subsequent to the expiration of the limitations period are not relevant to the Court's analysis herein, as they do not render his Petition timely.

[19] On December 18, 2013, the Court received and docketed a letter from the New York State Attorney General's Office, attached to which were additional documents from Petitioner--an "Addendum" dated December 6, 2013, and a "Memorandum of Law" dated December 1, 2013. See Docket # 13. Neither document, however, addressed the claim asserted by Petitioner in his Petition. Rather, the Addendum was devoted to the issue of the lack of probable cause for the issuance of a search warrant on the date of Petitioner's arrest, and the Memorandum of Law was Petitioner's statement of the legal standard governing the sufficiency of an affidavit supporting the issuance of an arrest warrant. See id.

guaranteed by the due process clause of the 14th Amendment.  Petition ¶ 12.  As set forth in the

Petition:

> Appellant's[20] retained counsel filed a timely Notice of Appeal, but failed
> to perfect said appeal.  Appellant subsequently filed a CPL § 440.20 motion
> to contest the consecutive sentences.  This motion was denied without a
> hearing.  Appellant filed a CPL § 460.30 motion for permission to file a late
> appeal.  The Appellate Division, Second Department denied this motion,
> with the decision that his appeal was deemed "*abandoned and
> dismissed*."[21]  A second CPL § 460.30 motion seeking permission to
> appeal was also denied.  Appellant now seeks habeas corpus relief,
> challenging the dismissal of his appeal on the ground that it deprived him of
> the right to the effective assistance of counsel on appeal as guaranteed by
> the Due Process Clause of the 14th Amendment.  Appellant, now 73-years
> old, would plead his case with the decision presented in Evitts v. Lucey,
> 105 S. Ct. 830, 831 (1985), in that, ". . . *criminal defendant is entitled to
> effective assistance of counsel on first appeal as of right*."

Id. (emphases in original).  Respondent seeks dismissal of the Petition as time-barred.  Resp't's

Mem. of Law (Docket # 9-1).

## I.      Timeliness of the Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") states, in

pertinent part, that

> [a] 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State

---

[20] Petitioner refers to himself as "appellant" throughout his Petition.

[21] The Court does not know to which Appellate Division decision Petitioner is referring, as there
is no decision in the state court records provided by Respondent in which the Appellate Division
uses the term "abandoned and dismissed" with respect to Petitioner's appeal.  To the extent that
Petitioner might be referring to the Appellate Division's March 15, 2010, decision, that was a
motion to proceed as a poor person upon appeal and for assignment of counsel, not a motion for
permission to file a late appeal.  See Ex. 4.  Indeed, in opposing that motion and cross-moving to
dismiss Petitioner's appeal, the People pointed out that Petitioner's application was "grossly
untimely"; that Petitioner "does not even now seek an enlargement of time in which to perfect his
appeal"; and that Petitioner provided "no[] explanation whatsoever for his unreasonable delay in
seeking relief."  Ex. 5 at 018.  Moreover, although the Petition refers to two CPL § 460.30
motions, there is only one such motion in the state court records provided--the motion dated
October 10, 2012 (Ex. 16).

court.  The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A).  Generally speaking,

> the expiration of a habeas petitioner's time to seek direct review is governed by state rules of appellate procedure and the Supreme Court's rules governing petitions for certiorari.  Thus, the conviction of a habeas petitioner who fails to appeal the judgment against him or her to the Appellate Division becomes final thirty days from the imposition of sentence, the point at which, under New York Criminal Procedure Law § 460.10(1)(a), his or her time to initiate a direct appeal expires.  See Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (citing N.Y. Crim. Proc. § 460.10(1)).  If a habeas petitioner appeals his or her conviction to the intermediate state appellate court, but does not then seek leave to appeal an adverse decision by that court to the New York State Court of Appeals, his or her conviction becomes final thirty days from the Appellate Division's decision under New York Criminal Procedure Law § 460.10(5).  See M.P. v. Perlman, 269 F. Supp. 2d 36, 38 (E.D.N.Y. 2003).  If a petitioner does apply for leave to appeal to the Court of Appeals but is denied leave, and does not then seek a writ of certiorari from the United States Supreme Court, his or her conviction becomes final ninety days after the decision of the Court of Appeals denying leave to appeal, at the expiration of the time to seek Supreme Court review under Supreme Court Rule 13.  See Gutierrez v. Smith, 702 F.3d 103, 108 n.2 (2d Cir. 2012).

Lue v. Marshall, No. 08 Civ. 3834, 2014 WL 787327, at *8 (S.D.N.Y. Feb. 24, 2014), appeal dismissed by Docket # 49, Case 14-739 (2d Cir. June 30, 2014).[22]

In this case, Petitioner was convicted in the Orange County Court on July 6, 2005, and was sentenced on October 7, 2005.  Affirmation in Opp'n ¶ 4.  Petitioner, through counsel, filed a timely notice of appeal dated October 14, 2005, with the Appellate Division, Second Department.  Ex. 3.  Petitioner states in his Petition that his first retained counsel, Marvin Hirsch, "wanted more money to proceed, and when appellant told him there was little left, Mr. Hirsch

---

[22] In the spirit of Local Civil Rule 7.1(c), a copy of the unpublished opinions cited herein are included with the copy of this Report and Recommendation being sent to Petitioner.

introduced appellant to attorney Brian S. MacNamara."  Petition ¶ 11(c).  Petitioner further

states:

> Mr. MacNamara accepted a fee of $10,000 to defend appellant at trial, and
> to do his appeal, if convicted. . . . Appellant agreed.  Mr. MacNamara
> subsequently submitted a Notice of Appeal after appellant's conviction, but
> went no further with appellant's case.  It would be 4-years [sic] before
> appellant's family would locate Mr. MacNamara again, at which time he
> informed them, "*I no longer practice law.  I've opened a veterinary clinic*."
> Mr. MacNamara disappeared yet again, but now is found listed in the *2012
> Lawyer's Diary*.  He continues to evade correspondence from appellant and
> his family.  On motions to resurrect his appeal, the Appellate Court deemed
> his appeal, "*abandoned and dismissed*."

Id. (italics in original).

On January 6, 2010, the Appellate Division, Second Department received

Petitioner's motion to proceed as a poor person upon appeal and for assignment of counsel.  Ex.

4.[23]  On March 15, 2010, this motion was denied, and Respondent's unopposed cross

---

[23] Included in the state court record produced by Respondent is a letter to Petitioner from the
Clerk's Office of the Appellate Division, Second Department dated December 22, 2009, which
states as follows:

> We have received your letter dated November 25, 2009, asking about the
> status of your appeal.  According to our records, on October 14, 2005, a
> notice of appeal was filed on your behalf seeking review of a judgment of
> the County Court, Orange County, rendered October 7, 2005, under
> Indictment No. 05-00055.  No action has been taken to prosecute your
> appeal, and it is presently marked as abandoned.

> If you have retained counsel, and you wish to have your appeal
> considered by this court, you must contact your counsel and advise him or
> her that you wish to proceed with the appeal.  If you had assigned counsel at
> the trial court, or if you had retained counsel but no longer have the funds to
> retain an attorney, you may apply to this court, in writing, for leave to
> prosecute the appeal as a poor person, and for the assignment of counsel, by
> submitting to this court an affidavit listing your assets and income.  If you
> had retained counsel at the trial court, you must explain what the attorney
> was paid, and by whom.  If you posted bail at the trial court, you must
> explain where the money came from, and what happened to it upon your
> conviction.

motion to dismiss the appeal for failure to timely perfect was granted.  Ex. 6.  As set forth

above, a copy of the Appellate Division's March 15, 2010, decision was served on Petitioner at

his last known address on April 2, 2010.  Barnes Aff. ¶ 6.[24]

>    In arguing that the Petition is time-barred, Respondent states,
>
>    In this case, the Appellate Division dismissed petitioner's appeal on
>    March 15, 2010.  He was served with notice of entry of the Court's decision
>    on April 2, 2010.  Allowing him thirty days from that time in which he
>    could have sought leave to the New York State Court of Appeals, and
>    thereafter, ninety days in which he could have sought review by the United
>    States Supreme Court, petitioner's state court judgment became final on or
>    about July 31, 2010 (see CPL 460.10(5); 460.20; 470.60(3); 28 USC
>    §2244(d)(1); Ross v Artuz, supra, at 98; Perez v Haynes, supra).

Resp't's Mem. of Law at 4.

>    Although Petitioner subsequently prepared a motion for the assignment of counsel and

for poor person relief addressed to the New York Court of Appeals, which was dated June 15,

2010, Ex. 7 at 024-025; see also Suppl. Affirmation Ex. 5, that motion did not constitute an

application for leave to appeal, and thus, it was returned to Petitioner by the New York Court of

---

>    If your appeal does not go forward, it may eventually be dismissed. . . .

Ex. 7 at 028.  It would appear that Petitioner's motion to proceed as a poor person upon appeal
and for assignment of counsel received by the Appellate Division on January 6, 2010, was
submitted in response to this letter.

[24] A copy of the Appellate Division's Decision and Order was mailed to Petitioner along with a
cover letter dated April 2, 2010.  Ex. 6; see also Barnes Aff. ¶ 6 & attached Logbook entries.  As
explained in Barnes' affidavit, "it is the regular practice of the Orange County District Attorney's
Office to serve notice of entry of all state court appellate and post-judgment decisions for matters
handled by the Orange County District Attorney Appeal's [sic] Bureau."  Barnes Aff. ¶ 2.
Although "[f]or certain types of orders, an affidavit of service accompanies the notice of entry[,]
[n]otice of entry for other types of orders is accomplished by way of a letter."  Id.  Barnes noted
that "[i]n addition to serving notice of entry of such state court decisions and orders on the
opposing party, for all matters that arise from felony prosecutions, I also cause to be filed a true
and accurate copy of all such state court decisions and orders, together with notice of entry[,]
with the Office of the Orange County Clerk."  Id.; see also Suppl. Affirmation Ex. 2 (Notice of
Entry filed with the Orange County Clerk on April 9, 2010).

Case 7:13-cv-02144-VB-LMS Document 22 Filed 02/24/16 Page 15 of 22

Appeals. Suppl. Affirmation Ex. 5 (June 28, 2010, letter from Stuart M. Cohen). Similarly, although on July 19, 2010, Petitioner served counsel for Respondent with a Notice of Application and Affidavit in Support of Motion addressed to the Appellate Division, Second Department, which sought leave to appeal that court's denial of Petitioner's motion for poor person relief and for the assignment of counsel, Ex. 7 at 027, 029; see Barnes Aff. ¶ 7, the Appellate Division has no record that Petitioner sought leave to appeal its March 15, 2010, Decision and Order. Agostino Aff. ¶ 9.

In calculating the date on which Petitioner's state court conviction became final, Respondent tacks on an additional ninety days to account for the time within which Petitioner could have petitioned the U.S. Supreme Court for a writ of certiorari. Resp't's Mem. of Law at 4; see McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citing Sup. Ct. R. 13(1) ("[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review")). The Court declines to do so, however, as there is no evidence that Petitioner ever actually filed an application for leave to appeal the March 15, 2010, Decision and Order. See Lue, 2014 WL 787327, at *8 n.8 ("Courts in this Circuit have interpreted [Supreme Court Rule 13] to mean that a petitioner whose conviction is affirmed by the Appellate Division, and who does not then seek discretionary review from the Court of Appeals, may not seek a writ of certiorari from the Supreme Court. Those petitioners, therefore, are not entitled to an additional ninety days before their convictions become final.") (citations omitted). Therefore, Petitioner's state court conviction became final 30 days after service on April 2, 2010, of the Appellate Division's decision on Petitioner.[25] See

---

[25] "An appeal to the court of appeals from an order of an intermediate appellate court is taken as follows: . . . Within thirty days after service upon the appellant of a copy of the order sought to

Rodney v. Breslin, No. 07-CV-4519 (SLT)(RML), 2008 WL 2331455, at *2 (E.D.N.Y. June 3, 2008) (finding that conviction became final after expiration of 30-day period in which petitioner could have sought leave to appeal to the Court of Appeals the Appellate Division decision dismissing his appeal as abandoned, but did not).[26]  Although the 30-day period in which to seek review of the Appellate Division's decision expired on May 2, 2010, because that day was a Sunday,[27] the Court finds that Petitioner's state court conviction became final on May 3, 2010.

---

be appealed, the appellant must make application, pursuant to section 460.20, for a certificate granting leave to appeal to the court of appeals [emphasis added]."  N.Y. Crim. Proc. Law § 460.10(5)(a).

[26] As the district judge explained:

> While counsel's failure to perfect the appeal may provide a basis for a constitutional claim regarding his right to counsel on appeal, it does not affect the finality of the conviction.  The Appellate Division dismissed the appeal as abandoned, on June 17, 1983.  If petitioner believed that the Appellate Division erred in dismissing his appeal as abandoned, the appropriate course of action was to appeal that decision to the New York Court of Appeals.  As petitioner did not pursue any further direct review, the judgment of conviction became final on July 18, 1983.

Rodney, 2008 WL 2331455, at *2.

[27] See http://www.timeanddate.com/calendar/monthly.html?year=2010&month=5&country=1 (last visited on 2/10/2016); Rodney, 2008 WL 2331455, at *1 n.2 (when the 30th day fell on a Sunday, the district court found that the 30-day period for seeking leave to appeal expired on the next day); see generally N.Y. Gen. Constr. Law § 25-a(1) ("When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day . . . ."); Fed. R. Civ. P. 6(a)(1)(C) ("The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time. . . . When the period is stated in days or a longer unit of time: . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

Thus, under § 2244(d)'s one-year statute of limitations, Petitioner had until May 3, 2011, to seek habeas relief from this Court.  The Petition was filed on February 22, 2013.  Therefore, it is untimely, unless the Court finds that the statute of limitations was subject to tolling.

## II.   Tolling of the Statute of Limitations

### A.   Statutory Tolling

Under the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year period of limitation.  28 U.S.C. § 2244(d)(2).  With respect to statutory tolling, the Court does not include the June 15, 2010, motion for the assignment of counsel and for poor person relief that Petitioner submitted to the New York Court of Appeals, since that motion was not accepted for filing.  See Suppl. Affirmation Ex. 5 (June 28, 2010, letter from Stuart M. Cohen, the Clerk of the Court for the New York Court of Appeals, returning Petitioner's papers to him).  Similarly, the Court does not include the July 14, 2010, application for leave to appeal addressed to the Appellate Division, Second Department, since the Appellate Division has no record of Petitioner seeking leave to appeal its March 15, 2010, Decision and Order.  See Agostino Aff. ¶ 9.

However, Petitioner's § 440.20 motion dated July 28, 2010 (and presumably filed on or about that date), tolled the statute of limitations period from that date through January 10, 2011, the date on which Petitioner's time to seek leave to appeal the denial of his § 440.20 motion had expired.[28]

---

[28] This motion was denied by the County Court on November 30, 2010.  Ex. 14.  Petitioner was served with a copy of the County Court's decision by mail 10 days later on December 10, 2010.  Id.  Thus, Petitioner had an additional 30 days—until January 9, 2011—to apply for leave to appeal to the Appellate Division.  See N.Y. Crim. Proc. Law §§ 450.15, 460.15; 22 NYCRR § 670.12(b).  However, since January 9, 2011, was a Sunday, Petitioner actually had until January 10, 2011, to apply for leave to appeal.  See footnote 27, supra.  There is no record that Petitioner

Likewise, the statute of limitations was tolled by Petitioner's motion for the dismissal of his appeal to be vacated and the cause reinstated, filed in the Appellate Division, Second Department on September 9, 2010.  Agostino Aff. ¶ 7 ("By letter filed with [the Appellate Division] on our [sic] about September 9, 2010, which was treated as a motion, the defendant moved to vacate the dismissal of his appeal and to reinstate the appeal.").[29]  However, in line with the prisoner mailbox rule, see footnote 1, supra, the Court deems the motion to have been filed on September 2, 2010, the date of the letter (treated as a motion) that Petitioner mailed to the Appellate Division, Second Department.  Ex. 11 at 083.  The Appellate Division denied the motion in a Decision & Order on Motion dated December 22, 2010.  Ex. 15.  There is no record that Petitioner ever sought leave to appeal that decision and order.  Barnes Aff. ¶ 9; Agostino Aff. ¶ 9.

Respondent states that "petitioner was served with notice of entry of that decision on January 19, 2011," and adds that "even allowing the petitioner thirty days in which he could have sought leave to appeal to the Court of Appeals from the December 22, 2010 decision and order," the statute of limitations started to run from February 18, 2011.  Resp't's Mem. of Law at 5.  However, as set forth above, Petitioner was served with a copy of the Appellate Division's

---

ever did so.  Barnes Aff. ¶ 8 ("I have no record of Anthony Russo seeking leave to appeal to the Appellate Division from the denial of this motion."); see also Agostino Aff. ¶ 11 ("[The Appellate Division] has no record of an appeal having been taken, or leave to appeal having been sought, from a November 30, 2010 order of the County Court, Orange County, under this indictment number.").

[29] Although the Court here deems the statute of limitations to have been tolled by Petitioner's motion for the dismissal of his appeal to be vacated and the cause reinstated, it is nonetheless unclear whether such a motion qualifies as "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" which could toll the statute of limitations under 28 U.S.C. § 2244(d)(2).  See Lue, 2014 WL 787327, at *9 (petitioner's motion to reinstate his appeal "likely does not qualify" as the kind of application that would allow for tolling under 28 U.S.C. § 2244(d)(2)).

Decision & Order at his last known address on January 20, 2011. Barnes Aff. ¶ 9 & attached Logbook entries.[30] Therefore, adding on the 30 days which Petitioner had to seek leave to appeal to the Court of Appeals, the statute of limitations did not resume running until February 22, 2011, since February 19 and 20, 2011, were a Saturday and a Sunday, and February 21, 2011, was the Presidents' Day holiday.[31]

     Based on the foregoing, the statute of limitations ran for 86 days (from May 3, 2010, to July 28, 2010) and was then tolled for 209 days (from July 28, 2010, to February 22, 2011), giving Petitioner until November 28, 2011, to file his habeas petition.[32] As Petitioner did not file the Petition until February 22, 2013, it is not saved from untimeliness by statutory tolling.

---

[30] A copy of the Appellate Division's Decision & Order on Motion was mailed to Petitioner along with a cover letter dated January 19, 2011. Ex. 15. As explained in footnote 24, supra, notice of entry for some types of orders "is accomplished by way of a letter," Barnes Aff. ¶ 2, and in addition to serving notice of entry of state court decisions and orders on the opposing party, Barnes causes to be filed "a true and accurate copy of all such state court decisions and orders, together with notice of entry[,] with the Office of the Orange County Clerk." Id.; see also Suppl. Affirmation Ex. 3 (Notice of Entry of the December 22, 2010, Decision & Order on Motion filed with the Orange County Clerk on January 26, 2011).

[31] See http://www.timeanddate.com/calendar/monthly.html?year=2011 (last visited 2/9/2016); footnote 27, supra.

[32] Since the statute of limitations had already run for 86 days before it was tolled, Petitioner had 279 days left in which to file his habeas petition once the statute of limitations resumed running. Because the statute of limitations expired on November 28, 2011, none of the motions that Petitioner filed, or attempted to file, subsequent to that date have any impact on statutory tolling, nor do they serve to reset the statute of limitations clock. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run. . . . If the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court.").

   The Court also notes that in calculating the statute of limitations, Respondent deemed the § 440.20 motion to have been filed on July 23, 2010, instead of July 28, 2010. Resp't's Mem. of Law at 4-5. Even if the statutory tolling period were extended an additional five days, the Petition would still be untimely.

B.     **Equitable Tolling**

Equitable tolling may be available to excuse an untimely petition where a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he [or she] experienced extraordinary circumstances. He [or she] must further demonstrate that those circumstances caused him [or her] to miss the original filing deadline." Id. "Consistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he [or she] acted with reasonable diligence throughout the period he [or she] seeks to toll." Id. at 138 (internal quotation marks and citations omitted). A petitioner may show that he or she acted with reasonable diligence "by showing that he [or she] acted as diligently as reasonably could have been expected under the circumstances." Id. at 138-39 (internal quotation marks, alteration, emphasis, and citation omitted). "Equitable tolling applies only in the 'rare and exceptional circumstance[].' " Smith, 208 F.3d at 17 (citation omitted).

Petitioner has not sought to avail himself of equitable tolling in this case (his reply papers, Docket # 10, fail to address the timeliness issue at all), and he has therefore made no showing of either reasonable diligence in pursuing his rights, or extraordinary circumstances that have prevented him from filing his Petition on time. Indeed, even though Petitioner appears to have been aware of the federal law providing the basis for his claim for habeas relief by no later

than September, 2010, see Ex. 11 (attaching to the motion for the dismissal of Petitioner's appeal to be vacated and the cause reinstated a copy of the decision in West v. Breslin, No. 00 Civ. 1404 (MBM), 2001 WL 856604 (S.D.N.Y. July 30, 2001), a habeas proceeding in which the petitioner advanced the same claim that Petitioner raises herein), he did not file his Petition until February 22, 2013, well over two years later, and more than a year after the AEDPA statute of limitations had expired.  Rather, Petitioner chose to pursue (unsuccessfully) various avenues for relief in state court instead.  Moreover, Petitioner's pro se status alone is not any extraordinary circumstance giving rise to equitable tolling.  Smith, 208 F.3d at 18; see Rodney, 2008 WL 2331455, at *4 ("A petitioner's pro se status and ignorance of the law do not warrant equitable tolling") (citations omitted).  Accordingly, equitable tolling cannot save the Petition from a finding of untimeliness.

## CONCLUSION

For the reasons set forth above, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed as time-barred.  As the Petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court, with extra copies delivered to the chambers of the Honorable Vincent

Briccetti, at the United States District Court, Southern District of New York, United States

Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the

undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: February 24, 2016
       White Plains, New York

                                        **SO ORDERED,**



                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of this Report and Recommendation has been mailed to the following:

Anthony Russo